# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

KENNETH HATLEN,                )    3:12-cv-00534-MMD-WGC
                               )
       Plaintiff,              )
                               )    **INTERIM**
    vs.                        )    **CASE MANAGEMENT ORDER**
                               )
GREG COX, et al.,              )
                               )
       Defendants.             )
_____)

       In the fourteen months that this case has been pending in the United States District Court for the District of Nevada, 175 documents have been filed with the clerk. Of that number, some 79 have been submitted by Plaintiff, including approximately 46 motions, 7 objections and numerous "notices," etc.

       More specifically, Plaintiff initially submitted his Complaint without an IFP application on October 3, 2012. Shortly thereafter he filed a motion for preliminary injunction (Doc. #3) and a motion for injunction (Doc. # 6). This court's screening order (Doc. # 7, 10/31/12) ordered Plaintiff to pay the filing fee or submit his IFP application within thirty days. Plaintiff's complaint (Doc. # 8) was dismissed without prejudice and he was given 30 days to submit an amended complaint. The prior motions for injunctive relief (Doc. ## 3, 6) were denied without prejudice. (*Id*.) Two weeks thereafter Plaintiff filed three more motions (Docs. ## 9, 10, 11) which were also denied without prejudice on November 19, 2012, because the court did not have jurisdiction to address the motions as they raised claims that were not part of the complaint filed in the action. (Doc. # 12.) In the ensuing weeks between the date of that order and the filing of Plaintiff's amended complaint on December 7, 2012 (Doc. # 22), Plaintiff filed six additional motions, four of which sought injunctive relief. (Docs. ## 13, 14, 15, 16, 17, 18.)

Following the flood of those motions, the court scheduled a hearing to address Plaintiff's multiple filings (Doc. # 20), but primarily Plaintiff's assertion he was being denied critical medical care and that his life and safety were in serious jeopardy (Doc. # 13). The hearing inquiring into Plaintiff's medical status was continued as Plaintiff had still not yet filed his IFP application (Order, Doc. # 24). On December 13, 2012, Plaintiff filed a motion to reconsider his earlier motions (Doc. # 25) and on December 14, 2012, he finally submitted his IFP application (Doc. # 26). At the hearing on December 14, 2012, Defendants were ordered to file an update concerning Plaintiff's medical condition prior to the next scheduled conference (Doc. #35). Between the date of that hearing and the status conference on January 28, 2013, Plaintiff filed five more motions and two notices (Docs. ## 28, 29, 30, 32, 36, 37 and 38). At the status conference the court received medical records and testimony regarding Plaintiff's alleged denial of medical care. (Doc. # 51.)

District Judge Larry R. Hicks screened Plaintiff's amended complaint (Doc. # 22) on January 25, 2013. As discussed below, certain of Plaintiff's claims were allowed to proceed. However, the case was stayed for 90 days to allow the parties an opportunity to discuss settlement. (Doc. # 44.) During the 90 day stay, Plaintiff filed another eleven motions (Docs. ## 46, 47, 48, 49, 50, 52, 53, 56, 58, 60 and 61).

Therefore, prior to the lifting of the mandatory 90-day stay, Plaintiff filed some twenty-nine motions and two "notices" in this matter. Since then, as reflected in this order, Plaintiff's propensity for filing motions, notices, etc., has continued unabated. The court finds that Plaintiff's civil rights lawsuit is requiring a disproportionate percentage of the court's time and resources.

First, Plaintiff repeatedly seeks to have the court act as a "super-grievance review board" by filing motions, notices, etc., regarding the alleged failure of the Nevada Department of Corrections or corrections officers to favorably receive his grievances (which now apparently exceed 1200 in number (Doc # 174 at 1)) or to refer the Defendants' alleged "criminal misconduct" to various state or federal agencies (*e.g.*, Docs. ## 159, 170, et al.).

Second, in addition to expecting the court to provide him a forum to air and seek redress of his inmate grievances, a problem the court has experienced more recently is that the subject matter of his motions, grievances, notices, etc., do not pertain to the § 1983 claims allowed to proceed in his amended complaint.(Doc. # 44.) In that regard, multiple claims for relief asserted (15 in total) were found by

District Judge Larry R. Hicks to state colorable constitutional claims. (*Id*. at 4-21.) The Screening order observed that Plaintiff in his amended complaint (Doc. # 22) "has sued over sixty-five ESP [Ely State Prison] and Northern Nevada Correctional Center ("NNCC") prison personnel and administrators." (*Id*. at 4.) Thus, the gravamen of Plaintiff's claim is whether his civil rights were violated when Plaintiff was an inmate at the *Ely State Prison* and *Northern Nevada Correctional Center*. His claims which were screened and allowed to proceed did <u>not</u> involve any alleged civil rights violations arising during his more recent incarceration at *Lovelock Correctional Center*.

The problem facing the court with the spate of recent motions is that Plaintiff's filings do not pertain to the alleged misconduct attributed to Nevada Department of Corrections employees while Plaintiff was incarcerated at NNCC or Ely. Plaintiff has been housed at the Lovelock Correctional Center ("LCC") since September 25, 2013. (Doc. # 99.) However, his recent motions, notices, etc., do not arise from any of the causes of action asserted against the ESP or NNCC Defendants, but instead address alleged misconduct of corrections personnel while confined at LCC.

For example, Plaintiff's "Notification of Criminal Obstruction/Contempt by the Defendants"[1] (Doc. # 159), relates to the alleged removal "of over 6000 pages/2 legal boxes of evidentiary legal documents" followed by the "defendants" supposedly taking "yet another 3000 pages, a third legal box." (*Id*. at 1.) This alleged misconduct would have occurred, if at all, while Plaintiff was confined at LCC. (Doc. # 163 at 2, 5). As Defendants' counsel notes, however, "none of the <u>named</u> Defendants are employed at Lovelock Correctional Center ("LCC")." (*Id*. at 2; emphasis added.)

Another example would be Plaintiff's January 14, 2014 "Emergency Motion for Immediate Relief." (Doc. # 167.) Plaintiff complains in this motion his 6 emergency grievances for medical treatment were delayed to the extent he was "praying for death." (*Id.* at 1.) He avers "the defendants are 'out of control'" – without, again, identifying *which* defendants are "out of control." However, since the subject of his motion pertains to conduct while he was housed at LCC, it is again apparent that none of the ESP or NNCC Defendants named in his suit would be involved.

Other examples of Plaintiff's misuse of the judicial system recently occurred on January 27,

---

[1] Typical of Plaintiff's motions, the "defendants" to whom he attributes this misconduct were not identified.

3

2014, when Plaintiff filed a "Motion to Review" (Doc. # 170), requesting an <u>emergency</u> review of four other motions Plaintiff filed concomitantly therewith:

Doc. # 171, "Emergency Relief to Dangerous-Hostile Environment by the Defendants"

Doc. # 172, "Additional Retaliation by the Defendants"

Doc. # 173, "Emergency Relief by Defendants Misconduct"

Doc. # 174, "Emergency Relief to Serious Injury Retaliation/Obstruction by Defendants."

Each of these motions necessarily arise out of conduct which occurred, if at all, during Plaintiff's incarceration at LCC. Plaintiff again fails to identify with specificity which Defendants were supposedly involved, but as best as the court can discern from Plaintiff's motions ## 170-174, none of the 65 or so named NNCC/ESP Defendants was involved. All of the correctional officers would have been LCC officers. (*See*, *e.g.*, Doc. # 163 at 2.)

The Ninth Circuit has not addressed the issue of correlation of a motion to the subject matter of the underlying § 1983 complaint. However, other circuits have repeatedly held that a plaintiff seeking *injunctive relief* must show "[a] relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *Johnson v. Alvarez*, 2:11-cv-484, 2012 WL 398443, at *4 (D. Nev. Feb. 7, 2012); *Ellis v. Benedetti*, 3:08-cv-657-MMD-WGC (Aug. 27, 2013, Doc. # 256). Following this logic, it only makes sense that any relief Plaintiff might seek in a motion or notice or whatever must be similarly related to the conduct and the Defendants named in the complaint, just as any injunctive relief Plaintiff might seek must show a relationship to the "conduct asserted in the complaint."

Plaintiff is also not permitted to file a civil rights complaint in federal court and then use that action as a forum to air his unrelated grievances. Such unrelated grievances must be lodged using the Nevada Department of Corrections grievance system and, if they remain unresolved and if the grievance is of a constitutional nature, by filing a new civil rights action. This court cannot function as a grievance review panel as Plaintiff seeks. Although Plaintiff states he is "not using the courts as a 'grievance theater'" (*id.* at 2), that is exactly what Plaintiff is attempting to do.

**CASE MANAGEMENT**

In view of the misuse of judicial proceedings by Plaintiff and the inordinate amount of time Plaintiff's filings have necessitated, the court concludes it is necessary to implement certain limited case management. By doing so, the court embraces the philosophy and text of Rule 1 of the Federal Rules of Civil Procedure, i.e., that *all* of the Federal Rules should be "construed and administered to secure the just, speedy and inexpensive determination of every action and proceeding." The Notes of the Advisory Committee to Federal Rule 1 emphasize not only the parties' responsibilities but the "affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil ligation is resolved not only fairly, but also without undue cost or delay." Rule 1, Advisory Committee Notes 1993.

To fulfill that "affirmative duty," and as this court announced at the motion hearing on Tuesday, January 28, 2014, as to any discovery motion or "notice" filed by Plaintiff not within the direct and immediate purview of District Judge Miranda M. Du:

1) Plaintiff must (a) include a certification that his filing pertains to one of the 15 causes of action (Doc. # 44 at 21), and (b) specifically identify which claim(s) for relief from which his filing arises;

2) Plaintiff must further specifically identify (a) which of the 65± named Defendants the filing pertains, and (b) what exact conduct the named Defendant(s) supposedly undertook to give rise to the relief Plaintiff seeks. Generically referring to "defendants" will be unacceptable.

Upon receipt of a filing of a discovery motion or notice which is within the purview of the Magistrate Judge, this court will undertake a preliminary review of such filing. Defendants' counsel will not be obligated to file any responsive memorandum unless and until ordered by this court.[2]

/ / /
/ / /
/ / /
/ / /

---

[2] Note: This "screening" or "gatekeeping" function will not apply to any filing which is within the purview of District Judge Miranda M. Du. Defendants will be required to timely respond to such filings in accordance with Local Rule 7-2.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule IB 3-1 of the Local Rules of Practice, specific written objections to this Order within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Order" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Order is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

**IT IS SO ORDERED.**

DATED: January 30, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE