UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| KENNETH HATLEN, | ) | 3:12-cv-00534-MMD-WGC |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| GREG COX, et al., | ) | |
| Defendants. | ) | |

Before the court is a document Plaintiff filed entitled, "Emergency Relief Chief (sic) Judge Jones (Miranda Du)." (Doc. # 185.)

Plaintiff is a pro se inmate plaintiff in this civil rights action, currently housed at Lovelock Correctional Center (LCC). His civil rights action targeted over sixty-five Ely State Prison (ESP) and Northern Nevada Correctional Center (NNCC) prison personnel and administrators. (Doc. # 44). The claims which were allowed to proceed by District Judge Hicks did not involve any alleged civil rights violations arising during his incarceration at LCC. (*Id.*)

The rambling fourteen page filing by Plaintiff seemingly asserts three contentions. One is that he "pleaded with Judge Cobb to exercise his authority and protect me, my due process and life. Judge Cobb 'Refused.'" (*id.*)

The second is that a "Sgt. Donnelley wrongfully sentenced (Plaintiff) to 18 months disciplinary seg without allowing me a defense..." Plaintiff further contends that "the defendants" are sending me to a maximum security prison to be additionally punished." (*Id* at 2; without naming "defendants" specifically.)

1       Last, Plaintiff claims "C/O Beckerdite and S C/O Harroun went in [Plaintiff's] cell and damaged some of [his] property...and they removed several items."

          * * In addition they said:

> "Weve (sic) been instructed to take all your legal documents and they did. "
>
> They took every document in 'this' case, every court order, every motion, every evidence document for 'this' case and my federal Habeas Petition, my federal Social Security Case, <u>All</u> grievances,
>
> Everything.

(*Id.*)

Plaintiff asserts that Director Cox ordered "Warden Legrand of the Lovelock Correctional Center to 'retaliate' and cruelly punish the Plaintiff for his litigating pursuits against him and the NDOC." (*Id* at 2.) Presumably, Plaintiff's contention is that the actions attributed to Sgt. Donnelly and C/Os Beckerdite and Harroun were instituted at the order of Warden Legrand and Director Cox, but Plaintiff does not specifically aver that. Regardless, it is difficult in any event to ascertain the specific "relief" Plaintiff seeks as to these three individuals.

**DISCUSSION**

**1) Failure of Judge Cobb "to protect me, my due-process and life" (Doc. #185 at 1)**

Plaintiff Hatlen contends that he advised the undersigned Magistrate Judge that Plaintiff's "life was in danger of physical threat of harm by the Defendants..." He asserts he "pleaded with Judge Cobb to exercise his authority and protect me, my due process and life. Judge Cobb refused." (Doc. # 185.) Plaintiff's contentions of his life being in danger were asserted very early on in this case in a motion for a restraining order because, Plaintiff alleged, Defendants "are criminally committing [illegible] violence, abuse and torture" against Plaintiff. (Doc # 3.)

The court has not been insensitive to Plaintiff's allegations of denial of medical care or alleged physical or mental abuse suffered by Plaintiff. In fact, this court took the unique step very early on in this case to ask the Attorney General to respond to Plaintiff's allegations referred to in Doc. # 13, even before any Defendant entered an appearance. The court's Minutes of Proceedings of December 14, 2012, reflect the court's early intervention into this case:

> The court notes for the record that, at this time, there has been no

2

>appearance made on behalf of the defendants named in this matter. Furthermore, Ms. Fairbank has agreed to participate and specially appear fore this hearing on behalf of the Northern Nevada Department of Corrections ("NDOC") at the request of the court.
>
>* * *
>
>Mr. Hatlen claims to be suffering from multiple heart attacks and that he is being denied medical care and insists that all of his motions for injunctive relief are relevant to the subject matters in his first amended complaint.
>
>The court inquires whether Ms. Fairbank has any knowledge or information regarding plaintiff's medical condition(s) and his current assertions of being denied medical care. Ms. Fairbank represents that Mr. Hatlen was recently relocated from Northern Nevada Correctional Center ("NNCC") to Ely State Prison ("ESP") and because of this transfer she has not had the opportunity to review his medical records.
>
>* * *
>
>The court expresses its concern of plaintiff's assertions that he is being denied medical treatment. In light of this concern, the court inquires whether the Attorney General's Office ("AG's Office") is able to investigate and submit a statement with regard to the healthcare issues Mr. Hatlen claims to be enduring presently. The court explains that it would not constitute such action taken by the AG's Office as being deemed a general appearance in this matter. The court will also pre-approve, if necessary, any documentation submitted by the AG's Office to be filed under seal due to the confidential nature the records may present.
>
>Ms. Fairbank represents that she will inquire with the medical providers and file with the court an update as to Mr Hatlen's current medical condition(s). The court request that the update include information regarding Mr. Hatlen's contention of multiple untreated heart attacks, the denial of psychotropic medication and the untreated fractured jaw. The court expresses its appreciation both toward Ms. Fairbank and NDOC for their help in this matter.

(Doc. # 34 at 1-2.)

The Office of the Attorney General undertook an investigation into Mr. Hatlen's allegations. A detailed report filed under seal (Doc. # 42) by the Attorney General reviewed Plaintiff's medical status and treatment; the summary report was accompanied by exhibits comprising 142 pages of medical records (Exhibit C). Also submitted was a declaration of an NDOC psychologist (Exhibit A) and an NDOC medical doctor (Exhibit B).

The minutes of a hearing this court conducted on January 28, 2013, appears as Doc. # 51. Without reiterating everything summarized in the minutes, the court was provided the following

3

information:

> The court turns to Ms Fairbank and asks that she address Mr. Hatlen's physical health complaints. Ms. Fairbank explains that the underlying issue of Mr. Hatlen's non-compliance with the mental health care and treatment provided to him is evidenced by the declarations of Dr. [Koehn] and Dr. Jackson. Ms. Fairbank indicates that Mr. Hatlen has repeatedly been provided the opportunity to take medication to assist him with regard to his anxiety disorder. In summary, Ms. Fairbank represents that it is Mr. Hatlen's mental health issues that perpetuate many of his physical health complaints. Additionally, because Mr. Hatlen is not compliant with the treatment offered for mental health concerns, it has been difficult for the medical providers at the institution to provide satisfactory care or treatment.
>
> With respect to Mr. Hatlen's grievances, Ms. Fairbank informs the court that, as of the beginning of December 2012, there have been 278 pages of grievances filed by Mr. Hatlen with just over a year time frame. Ms. Fairbank asserts that this behavior and multiple grievances make it challenging to address specific issues or concerns that may exist with respect to his mental and medical health care treatment. Ms. Fairbank represents that Nevada Department of Corrections ("NDOC") is being responsive, that many doctors are familiar with Mr. Hatlen and his complaints, and they are trying, to the best of their ability, to provide appropriate medical care and treatment.

(*Id.* at 2.)

After reviewing the professionals' declarations regarding Plaintiffs medial and mental health care, and examining the medical records, this court concluded that Plaintiff's allegations of medical mistreatment were unsubstantiated. (Doc. # 51 at 2, 3.) Since that date Plaintiff has made numerous other allegations of alleged denial of medical care, such as Doc. # 60, Plaintiff's twentieth motion for injunction (alleging, *inter alia*, abuse by NDOC officials, denial of medical care); Doc. # 97, Plaintiff's 81 page "Emergency Motion of Injunction and Hearing to Discuss" (alleging illegal seizure of files and "torture" of the Plaintiff; *id* at 2); and Doc. # 114, Plaintiff's "Motion to Disclose Defendants Criminal Obstruction, Tampering and Destruction of Legal Documents." The record details the numerous times this court gave consideration to Plaintiffs' numerous filings (which now approximate some 85 entries in the docket).

Thus, this court has not ignored Plaintiff's allegations. Instead, this court had Plaintiff's physical and mental health status reviewed early on in proceedings. Additionally, this court instructed Mr. Hatlen at a status conference on January 28, 2014, (Minutes, Doc. # 179), and as the court confirmed in its Interim Case Management Order of January 30, 2014 (Doc. # 176), that

> Plaintiff is also not permitted to file a civil rights complaint in federal court and then use that action as a forum to air his unrelated grievances. Such unrelated grievances must be lodged using the Nevada Department of Corrections grievance system and, if they remain unresolved and if the grievance is of a constitutional nature, by filing a new civil rights action. This court cannot function as a grievance review panel as Plaintiff seeks. Although Plaintiff states he is "not using the courts as a 'grievance theater'" (*id.* at 2), that is exactly what Plaintiff is attempting to do.

(*Id.*, at 4:23-28.)

The record also reflects that on January 27, 2014, Plaintiff filed a motion (Doc. #170) seeking "emergency review" of four other motions asserting, inter alia, claims of a "hostile environment" (Doc. # 171), "additional retaliation" (Doc. # 172), "emergency relief by Defendants' misconduct" (Doc. # 173), and "emergency relief to serious injury retaliation/obstruction by defendants" (Doc. # 174). The court denied those motions because they did not arise out of the subject matter of this action, involved individuals who are not parties to this action, and requested inappropriate intervention by this court into prison administration which had not been appropriately "grieved" nor the subject of a viable civil rights claim.

**2) "Wrongful Sentence" of Sgt. Donnelley (Doc. # 185 at 2)**

This allegation arises from Plaintiff's detention at LCC. It does not arise from any alleged misconduct at ESP or NNCC which is the subject of Plaintiff's pending action (Doc ## 176, 44). The court cannot address a claim which is not the subject of a pending civil rights claim which has survived screening. (Doc. # 76.)[1]

**3) Alleged Removal of Legal Documents by "C/O Beckerdite" and "S C/O Harroun" (Doc. # 185 at 2)**

As best as the court can discern, neither of these individuals is a defendant in this matter.

---

[1] This court notes Judge Hicks' Screening Order (Doc., # 44) makes no reference to any claims which were deemed to be viable as against a "Sgt. Donelley." (There are no individuals named "Donnelly" in Plaintiff's Amended Complaint; Doc. #22). This court further notes, however, the office of the Attorney General has entered an appearance for "Russelle Donnelly" (Doc. # 67) and later answered the amended complaint on this Defendant's behalf (Doc. # 80; the spelling of the first name was corrected to "Russell"). Despite the Attorney General's appearance in this action for Russell Donnelly, and although this court may be mistaken in the interpretation of a complicated record in this case, this court questions whether Russell Donnelly is in fact a Defendant in this action, even assuming the "Sgt. Donnelley" in Plaintiff's filing (Doc.# 185) is the same individual for whom an appearance has been entered.

However, even if "Sgt. Donelley" in a pending Defendant in this action, the conduct attributed to him in Plaintiff's instant motion arose during Plaintiff's incarceration at LCC and not ESP or NNCC and did not arise from any of his claims asserted in his amended complaint. (Doc. # 22.)

1  Additionally, the conduct complained of arose, if at all, at LCC. For the reasons expressed in this court's
2  Interim Case Management Order (Doc. # 176), these contentions of misconduct in confiscating
3  Plaintiff's files and in denying him access to the courts are not properly before this court.

4  Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346
5  (1996). To establish a violation of the right of access to the courts, a prisoner must establish that he or
6  she suffered an actual injury, a jurisdictional requirement that flows form the standing doctrine and may
7  not be waived. *Id*. at 348 (citation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir.
8  2008) (citation omitted) (explaining, "[f]ailure to show that a 'non-frivolous legal claim ha[s] been
9  frustrated' is fatal" to a claim of denial of access to courts). "Actual injury" is defined as "actual
10 prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline
11 or present a claim." *Id*. at 348 (citation and internal quotations omitted). Delays in providing legal
12 materials or assistance that result in actual injury are "not of constitutional significance" if "they are the
13 product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at
14 362.

15 The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus
16 proceedings, and § 1983 actions. *See Lewis*, 518 U.S. at 353 n. 3, 354-55; *Simmons v. Sacramento Cnty.*
17 *Super. Ct.*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) ("a prisoner has no constitutional right of access to
18 the courts to litigate an unrelated civil claim"). The right of access to the courts is only a right to bring
19 complaints to the federal court and not a right to discover such claims or to litigate them effectively once
20 filed with a court. *See Lewis*, 518 U.S. at 354-55; *Cornett v. Donvan*, 51 F.3d 894, 898 (9th Cir. 1995).

21 Plaintiff has demonstrated no "actual injury" secondary to the alleged orders of Director Cox or
22 Warden Legrand or arising from the alleged removal of documents by C/Os Beckerdite and Harroun.[2]

---

24 [2] That Plaintiff has been denied access to the courts is without merit. His recent "Motion to Review" (Doc. # 170)
25 sought this court's intervention with respect to four other motions, a 65 page document regarding "Emergency Relief to Dangerous-Hostile Environment" (Doc. #171); a "Notice of Additional Retaliation" (Doc. # 172), wherein he claimed 1000
26 pages of documents were taken from him, as opposed to the "ten legal boxes" which he alleges in the instant filing "they" (names unknown) have "stolen" from him); a twenty page filing entitled "Emergency Relief by Defendants Misconduct"
27 (Doc.# 173); and a twenty one page filing named "Emergency Relief to Serious Injury Retaliation/Obstruction by Defendants" (Doc. # 174).  Plaintiff has also recently been able to lodge objections to numerous orders of this court (see, e.g., Doc. ## 175, 180), as well as a Motion to Effect Service on Unserved Defendants (Doc. # 181), which this court granted (Doc. # 186);
28 a Motion for Leave to Amend (Doc. # 183); a Motion for Appointment of Counsel (Doc # 184); and the filing now before

**Failure to Comply with Court's Directive**

Because of Plaintiff's propensity to file motions, requests, notices, etc., with this court which are unrelated to the subject of his pending action, this court in its Interim Case Management Order (Doc. # 176) required:

> 1) Plaintiff must (a) include a certification that his filing pertains to one of the 15 causes of action (Doc. # 44 at 21), and (b) specifically identify which claim(s) for relief from which his filing arises;
>
> 2) Plaintiff must further specifically identify (a) which of the 65± named Defendants the filing pertains, and (b) what exact conduct the named Defendant(s) supposedly undertook to give rise to the relief Plaintiff seeks. Generically referring to "defendants" will be unacceptable.

(*Id*. at 5:14-19.)

Other than a passing, oblique reference to Director Cox's alleged role in these allegations, this latest filing (Doc. # 185) seemingly ignores the precondition the court has impressed on Plaintiff with respect to discovery motions or notices. The court will not impose sanctions against Plaintiff at this time, but Plaintiff is cautioned his failure to comply with the dictates of the Interim Case Management Order (Doc. # 176) may result in sanctions being imposed against Plaintiff.

**ORDER**

Plaintiff's request for "emergency relief" (Doc. # 185) is **DENIED.**

**IT IS SO ORDERED.**

DATED:  February 7, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

---

the court (Doc. # 185).  While Plaintiff may not have been afforded the relief he seeks, clearly he has not been denied access to the court.